SECOND DIVISION
FILED: July 24, 2008

No. 1-08-1859

| | |
|---|---|
| GRANT IMPORTING & DISTRIBUTING CO., HAYES BEER DISTRIBUTING COMPANY, L&V DISTRIBUTORS, INC., CHICAGO BEVERAGE SYSTEMS LLC, JOSEPH MULLARKEY DISTRIBUTORS, INC., TOWN & COUNTRY DISTRIBUTORS, INC., KOZOL BROS., INC., FRED W. LOSCH BEVERAGE CO., SCHAMBERGER BROS., INC., BURKE BEVERAGE, INC., and EUCLID BEVERAGE, LTD., | APPEAL FROM THE CIRCUIT COURT OF COOK COUNTY |
| Plaintiffs-Appellants | 08 CH 07887 |
| v. | |
| AMTEC INTERNATIONAL OF NY CORP. and EUROPEAN BEER IMPORTS, INC., | HONORABLE JAMES R. EPSTEIN,, |
| Defendants-Appellees. | JUDGE PRESIDING. |

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Grant Importing & Distributing Company, Hayes Beer Distributing Company, L&V Distributors, Inc., Chicago Beverage Systems LLC, Joseph Mullarkey Distributors, Inc., Town & Country Distributors, Inc., Kozol Brothers, Inc., Fred W. Losch Beverage Company, Schamberger Brothers, Inc., Burke Beverage, Inc., and Euclid Beverage, Ltd., filed the instant appeal pursuant to Supreme Court Rule 307 (188 Ill. 2d R. 307), seeking the reversal of an

No. 1-08-1859

order of the circuit court which denied their motion for a temporary restraining order (TRO). For the reasons which follow, we affirm.

In addition to other theories of recovery, the plaintiffs sought injunctive relief against the defendants, Amtec International of NY Corp. (Amtec) and European Beer Importers, Inc. (European), contending that they violated the Beer Industry Fair Dealing Act (Act) (815 ILCS 720/1 et seq. (West 2006)). In their second amended complaint, the plaintiffs made the following factual assertions.

Until approximately December of 2007, Advanced Brands & Importing, Inc. (Advanced) was the exclusive importer of Zywiec beer into the greater Chicagoland area. The plaintiffs are duly licensed "beer wholesalers" as defined by section 1.1(3) of the Act (815 ILCS 720/1.1(3)(West 2006)), and Advanced granted them the right to be the exclusive wholesalers of Zywiec beer in their respective geographic territories in Illinois.

Advanced has recently advised the plaintiffs that the manufacturer of Zywiec beer refuses to ship the beer to it for import and distribution in Illinois. In its place, the manufacturer has granted Amtec, or its wholly owned subsidiary European, the exclusive right to import and distribute Zywiec beer into the United States, including the greater Chicagoland area.

2

No. 1-08-1859

Neither Amtec nor European has agreed to distribute any further Zywiec beer to the plaintiffs, and they have not provided the plaintiffs with any reason for the termination of their distributorships, nor have they afforded the plaintiffs an opportunity to cure any cause for the terminations. The plaintiffs sought a TRO enjoining Amtec and European from selling or distributing Zywiec beer in Illinois until such time as the plaintiffs' exclusive distribution rights can be adjudicated.

Amtec responded to the plaintiffs' motion supported, in part, by the affidavit of its president, Boguslaw Pajor. According to Pajor's affidavit, Zywiec beer was imported into Illinois from 2005 through 2007 by Advanced pursuant to an agreement with Grupa Zwyiec S.A. (Grupa), the brewer of Zwyiec beer. On December 10, 2007, Grupa notified Advanced that, effective January 1, 2008, Advanced would no longer be the importer of Zwyiec beer. Thereafter, Grupa appointed Amtec as the exclusive importer of Zywiec beer into Illinois. Amtec, in turn, appointed European the sole distributor of Zywiec beer in Illinois. Amtec asserted that it did not terminate the plaintiffs' rights to distribute Zywiec beer, and argued that, since it is not a "successor brewer" within the meaning of section 1.1(6) of the Act (815 ILCS 720/1.1(6)(West 2006)), it has no obligation to honor the plaintiffs' distribution agreements with Advanced.

3

No. 1-08-1859

The circuit court denied the plaintiffs' motion for a TRO, and this appeal followed. The plaintiffs argue, as they did before the trial court, that Amtec and European violated the Act by terminating, canceling or failing to renew their Zywiec beer distributorship agreements without notice or good cause and without providing them with an opportunity to cure the reason for the terminations and, as a consequence, they were entitled to injunctive relief pursuant to section 9(3) of the Act (815 ILCS 720/9(3)(West 2006)).

Section 3 of the Act provides that, except for reasons not relevant to this action, "no brewer or beer wholesaler may cancel, fail to renew, or otherwise terminate an agreement unless the brewer or wholesaler furnishes prior notification to the affected party." 815 ILCS 720/3(West 2006). Section 4 states that "[n]o brewer or beer wholesaler may cancel, fail to renew or otherwise terminate an agreement unless the party intending that action has good cause for the cancellation, failure to renew or termination, has made good faith efforts to resolve disagreements, and, in any case in which prior notification is required under Section 3, the party intending to act has furnished the prior notification and the affected party has not eliminated the reasons specified in the notification for cancellation, failure to renew, or termination, within 90 days after the sending of the notification." 815 ILCS

4

No. 1-08-1859

720/4(West 2006). In order to determine whether sections 3 and 4 of the Act are applicable to the circumstances present in the instant case, reference must be made to the Act's definitions of the terms "agreement," "brewer," and "successor brewer."

The Act defines an "agreement" as "any contract, agreement, arrangement, operating standards, or amendments to a contract, agreement, arrangement, or operating standards, the effect of which is to substantially change or modify the existing contract, agreement, arrangement, or operating standards, whether expressed or implied, whether oral or written, for a definite or indefinite period between a brewer and a wholesaler pursuant to which a wholesaler has been granted the right to purchase, resell, and distribute as a wholesaler or master distributer any brand or brands of beer offered by a brewer." 815 ILCS 720/1.1(2)(West 2006). A "brewer" is defined, in relevant part, as a person who is engaged in the manufacturer of beer, a master distributer or a successor brewer. 815 ILCS 720/1.1(4)(West 2006). A "successor brewer" is "any person who in any way obtains the distribution rights that a brewer or master distributor once had to manufacture or distribute a brand or brands of beer whether by merger, purchase of corporate shares, purchase of assets, or any other arrangement." 815 ILCS 720/1.1(6)(West 2006).

There is no dispute concerning the status of the importing and

5

distribution arrangements between Grupa and Advanced, its master distributor, and between Advanced and the plaintiffs as "agreements" within the meaning of the Act. The issue is whether the defendants are "brewers" in the context of those agreements such that they might be held liable for failing to comply with the requirements of sections 3 and 4 of the Act.

The plaintiffs argue that, by obtaining the right to import and distribute Zywiec beer that was previously held by Advanced, Amtec became a successor brewer and was, therefore, obligated to continue to use the plaintiffs as exclusive wholesalers within their respective territories. Amtec argues that it is not a successor brewer within the meaning of the Act because it obtained its import and distribution rights directly from the manufacturer, Grupa, and not from or through Advanced. Resolution of the issue involves the construction of the Act's definition of a "successor brewer."

The cardinal rule of statutory construction is to ascertain the intent of the legislature. Murray v. Chicago Youth Center, 224 Ill. 2d 213, 235, 864 N.E.2d 176 (2007). Legislative intent is best gleaned from the words of the statute itself, and where the statutory language is clear and unambiguous, it is to be given effect. General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 13, 862 N.E.2d 209 (2007). Issues of

No. 1-08-1859

statutory construction are reviewed <u>de</u> <u>novo</u>. <u>Paris v. Feder</u>, 179 Ill. 2d 173, 177-78, 688 N.E.2d 137 (1997).

Initially it might appear that any entity that obtains the distribution rights previously held by a brewer or master distributor is a successor brewer within the meaning of the Act. However, a closer analysis of the statute leads us to conclude that the manner in which the distribution rights are obtained are critical to a determination of whether an entity is a successor brewer. We believe that the statute contemplates that, in order to qualify as a successor brewer, the distribution rights must have been obtained through some arrangement with the original holder of the rights, be it by merger, purchase of corporate shares, purchase of assets, or otherwise.

If, as the plaintiffs argue, the only circumstance necessary for an entity to qualify as a successor brewer is that it obtain the distribution rights previously held by a brewer or master distributor, the legislature would have had no need to include the phrase "whether by merger, purchase of corporate shares, purchase of assets, or any other arrangement." 815 ILCS 720/1.1(6)(West 2006). One of the fundamental principals of statutory construction is that words and phrases should not be viewed in isolation, but should be interpreted so that terms are not rendered superfluous. <u>Land v. Board of Education of the City of Chicago</u>, 202 Ill. 2d 414,

7

No. 1-08-1859

422, 781 N.E.2d 249 (2002). Additionally, the phrase "or any other arrangement" appearing at the end of the definition of a successor brewer (815 ILCS 720/1.1(6)(West 2006)) should be interpreted under the doctrine of ejusdem generis as describing a transaction similar to the preceding types of transactions listed in the statute; namely, a merger, purchase of corporate shares, or purchase of assets. See City of East St. Louis v. East St. Louis Financial Advisory Authority, 188 Ill. 2d 474, 484-85, 722 N.E.2d 1129 (1999).

Based upon the foregoing analysis, we believe that, to qualify as a successor brewer under the Act, a replacement distributor of beer must have obtained its distribution rights through some arrangement with the original holder of the rights that is similar to the type of transaction contemplated by the statute. See Shestokas Distributing, Inc. v. Hornell Brewing Company, Inc., No. 93-1537, 1993 WL 522179 (7th Cir. Dec. 16, 1993).

It is clear from the matters of record that the defendants did not obtain their distribution rights from Advanced and, as a consequence, they do not qualify as either successor brewers or brewers under the Act. That being the case, the plaintiffs did not acquire any rights under the Act to injunctive relief against them. We find, therefore, that the circuit court did not abuse its discretion in denying the plaintiffs' motion for a TRO.

8

No. 1-08-1859

Affirmed.

SOUTH and KARNEZIS, JJ., concur.